UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES of AMERICA,

      -against-               23 CR 286
                             PLEA

LIN FENG,

          Defendant.

------------------------------------x

                      United States Courthouse
                      White Plains, New York

                      July 25, 2024

B e f o r e:

                HON. ANDREW E. KRAUSE,
                      United States Magistrate Judge

A P P E A R A N C E S:


DAMIAN WILLIAMS
     United States Attorney for
       the Southern District of New York
MICHAEL D. LOCKARD
     Assistant United States Attorney


FEDERAL DEFENDERS OF NEW YORK INC.
       Attorneys for lIN fENG
BENJAMIN D. GOLD

ALSO PRESENT:  UNA WILKINSON, Interpreter




    ** Transcribed from digitally recorded proceedings **

       Angela O'Donnell - Official Court Reporter
               (914)390-4025

THE DEPUTY CLERK:  Good afternoon all.  This is the matter of USA v. Feng, docket number 23CR286.  The Honorable Andrew Krause presiding.

Counsel, note your appearance for the record, starting with the government.

MR. LOCKARD:  Good afternoon, your Honor.  This is US Attorney Michael Lockard for the government.

THE COURT:  Good afternoon, Mr. Lockard.

MR. GOLD:  And good afternoon, your Honor.  On behalf of Mr. Lin Feng, Ben Gold from the Federal Defenders.

THE COURT:  Good morning, Mr. Gold.  Good afternoon, Mr. Feng.

And could I please have the interpreter identify herself for the record, please.

THE INTERPRETER:  Una Wilkinson, (inaudible).

THE COURT:  Good afternoon, Ms. Wilkinson.  And Ms. Wilkinson, you're federally certified interpreter?

THE INTERPRETER:  (Inaudible).

THE COURT:  Okay, very good.

All right, Mr. Feng, my name is Judge Krause.  I want to advise you that today's proceeding is not a trial.  It is my understanding that you have decided to enter a guilty plea.  This proceeding is for the purpose of ensuring that you are aware of your rights in connection with your plea and that any waiver of those rights is knowing and voluntary prior to you

entering your guilty plea.  If at any time you do not hear or understand what I am saying to you with the assistance of the interpreter, please let me know that, Mr. Feng, so that I can repeat myself and try to explain it more clearly.

If you would like to confer with Mr. Gold at any point regarding anything I say, please let me know that as well and we'll make time for you to do that.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  Now, I'm sorry, just to pause for a second.

Ms. Wilkinson, we're going to need you to speak into a microphone so that we have a clear recording of your responses.  You can do that by sitting at the end of the table there.

Thank you, Mr. Davila.

THE DEFENDANT:  I understand.

THE COURT:  Okay, thank you.

Mr. Feng, I want to advise you that you have the right to be represented by counsel throughout the entire case and that you may consult with your attorney at any stage of this proceeding.  You also have the right to remain silent. Any statement that you do make may be used against you.  You have this right to remain silent even if you have already made statements to law enforcement officers.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  All right, Ms. Brown, will you please place Mr. Feng under oath or affirmation?

(Lin Feng sworn)

THE COURT:  Okay, Mr. Feng, it is important for you to understand that if you knowingly make a false statement during these proceedings, you can be subject to prosecution for perjury or for making a false statement to the Court and you can face a punishment up to five years in prison and a $250,000 fine for committing that crime.  That punishment would be separate and apart from any sentence that you may be facing on the crimes charged in the indictment that has brought us here today.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  All right, Mr. Feng, will you please state your full name for the record?

THE DEFENDANT:  Lin Feng.

THE COURT:  How old are you, Mr. Feng?

THE DEFENDANT:  I was born in 1979, so 45 years old.

THE COURT:  Okay.  Are you a citizen of the United States, Mr. Feng?

THE DEFENDANT:  No.

THE COURT:  And what country are you a citizen of?

THE DEFENDANT:  China.

THE COURT:  How far did you go in formal school, Mr. Feng?

THE DEFENDANT:  University college.

THE COURT:  Are you currently or have you recently been under the care of a doctor, psychologist or psychiatrist for any reason?

THE DEFENDANT:  No.

THE COURT:  Have you taken any mind-altering drugs, medicine, or pills, or consumed any alcohol in the last 24 hours?

THE DEFENDANT:  No.

THE COURT:  Is your mind clear here today, Mr. Feng?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand what's happening at this proceeding?

THE DEFENDANT:  Yes.

THE COURT:  All right, Mr. Lockard, any objection to Mr. Feng's ability to plead at this time?

MR. LOCKARD:  No, your Honor.

THE COURT:  Mr. Gold?

MR. GOLD:  No.

THE COURT:  Mr. Feng, this proceeding is called a plea allocution.  I want you to understand that you have an absolute right to have this plea allocution conducted before a

United States District Judge.  It is the District Judge, in this case Judge Román, who will impose the sentence in your case.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  I'm a United States Magistrate Judge.  If you consent, then I will conduct the plea allocution, and I will then make a report to Judge Román in which I will recommend whether or not he should accept your guilty plea.  I will make that recommendation based on the information that is brought out during today's proceedings.  It is important for you to understand that the Court will not accept your plea unless the Court is satisfied that you fully understand all of your rights and that you are, in fact, guilty.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  Okay, now I have before me, Mr. Feng, a document we refer to as a consent to proceed before a Magistrate Judge for a plea allocution.

Mr. Feng, is this your signature on the form right here?

THE DEFENDANT:  Yes.

THE COURT:  What this form says, in sum and substance, is that you understand that you have the right to have this plea taken by a United States District Judge, but

that are you agreeing to have the plea taken by me, a United States Magistrate Judge instead; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  Before you signed this form, Mr. Feng, did Mr. Gold explain it to you with the assistance of an interpreter?

THE DEFENDANT:  Yes.

THE COURT:  Did anyone threaten you or coerce you or promise you anything in order to get you to sign the consent form?

THE DEFENDANT:  No.

THE COURT:  Did you sign the form freely and voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Lockard, do you know of any reason why the waiver and consent to proceed with this plea allocution before a Magistrate Judge should not be accepted?

MR. LOCKARD:  I do not, your Honor.

THE COURT:  Okay, thank you.

Mr. Gold?

MR. GOLD:  No, I do not.

THE COURT:  All right, thank you, as well.

Mr. Feng, I find that you are fully competent and that you understand the proceedings before you here today.  I also find that you are capable of waiving your right to appear

before a District Judge in order to enter your guilty plea, and I therefore accept the form, which has been signed and is now part of the court record.  The consent form has been marked as Court Exhibit Number 1 and will remain in the court file.

Now, Mr. Feng, I understand that you wish to change your plea as to Counts Two and Three of the indictment and to plead guilty as to those charges; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Before deciding whether to accept your guilty plea, Mr. Feng, I'm going to ask you a series of questions.  It's very important that you answer these questions honestly and completely.  The purpose of these proceedings is to make sure that you understand your rights, to decide whether you are pleading guilty of your own free will, and to make sure that you are pleading guilty because you are guilty and not for some other reason.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  If you do not understand any of my questions as they're being interpreted by Ms. Wilkinson, or if you want at any time to consult with Mr. Gold, please let me know because it is important that you understand every question before you answer.  Okay?

THE DEFENDANT:  Understand.

THE COURT:  All right.  Now, Mr. Feng, I have before

me the indictment that contains charges against you in this case. Because you are intending to plead guilty only as to Counts Two and Three of the indictment, I'm going to focus my attention and our review of the indictment on just those counts.

Specifically, Count Two of the indictment charges you with acting as an agent of a foreign government and a foreign official without prior notification to the Attorney General in violation of Title 18 U.S. Code sections 951 and 2.

Count Three of the indictment charges you, Mr. Feng, with bribing a public official in violation of Title 18 U.S. Code sections 201(b)(1) and (2).

Mr. Feng, have you received a copy of the indictment?

THE DEFENDANT: Yes.

THE COURT: Have you reviewed it with Mr. Gold with the assistance of an interpreter?

THE DEFENDANT: Yes.

THE COURT: Do you understand what the indictment says?

THE DEFENDANT: Yes.

THE COURT: Do you want me to read the entire indictment here to you in open Court today?

THE DEFENDANT: I understand very well.

THE COURT: Have you had sufficient time to speak with Mr. Gold about the charges in the indictment and about how

you wish to plead?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with Mr. Gold the charges against you, including the charges to which you intend to plead guilty, as well as any other charges that the government has made in this case?

THE DEFENDANT:  Understand, yes.

THE COURT:  Has Mr. Gold told you the consequences of pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And, Mr. Feng, are you satisfied with Mr. Gold's representation of you up until this point?

THE DEFENDANT:  Satisfied.

THE COURT:  And have you told Mr. Gold everything that you know about this case?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Feng, I have before me a plea agreement that is dated May 26, 2024.  The agreement is seven pages long and it is signed on the last page by Mr. Lockard, by Perry Carbone, the Chief of the White Plains Division of the US Attorney's office, and it is also signed or was signed on July 1st, 2024, by Mr. Gold, by Ms. Lau, a different interpreter, and I believe it was signed by you as well.

Mr. Feng, is this your signature on the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  The plea agreement will be marked as a government exhibit, and the original plea agreement will remain in the custody of the US Attorney's office.

Mr. Feng, have you read or reviewed the entire plea agreement dated May 26, 2024, with the assistance of an interpreter?

THE DEFENDANT:  Yes, I know it all.

THE COURT:  Okay.  And have you reviewed the contents of the agreement with Mr. Gold?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Gold, did you review each and every part of the plea agreement with Mr. Feng with the assistance of an interpreter?

MR. GOLD:  Yes, I did, your Honor, and I will note that Mr. Feng also has a translated copy of the plea agreement (indiscernible).

THE COURT:  Thank you very much, Mr. Gold.

Mr. Feng, are you satisfied that you understand the entire plea agreement which Mr. Gold has reviewed with you?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions, either for Mr. Gold or for me, at this moment about what the plea agreement says?

THE DEFENDANT:  No.

THE COURT:  Does the plea agreement contain the complete agreement between you and the government in connection with this case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand, Mr. Feng, that anything that is not set forth in the plea agreement or which is not told to me at this time on the record will not be binding on the outcome of your case?

THE DEFENDANT:  Understand.

THE COURT:  Mr. Lockard, is there anything beyond the written plea agreement that the Court should know of?

MR. LOCKARD:  No, your Honor.

THE COURT:  Mr. Gold, are there any other agreements that the Court should be aware of?

MR. GOLD:  No.

THE COURT:  Okay.

Mr. Feng, did you sign the plea agreement freely and voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Did anyone force you or coerce you or threaten you or promise you anything other than what is set forth in the written plea agreement in order to get you to sign the plea agreement?

THE DEFENDANT:  No.

THE COURT:  Okay.  Mr. Feng, if you are convicted of

the charges contained in this indictment, specifically Counts Two and Three of the indictment, either after trial or by plea of guilty, you would be subject on Count Two to a maximum term of imprisonment of ten years, a maximum term of supervised release of three -- and a maximum term of supervised release of three years.

You would be subject on Count Three to a maximum term of imprisonment of 15 years and a maximum term of supervised release of three years.  With respect to both Counts Two and Three, you would be subject to a maximum fine pursuant to Title 18 U.S. Code Section 3571 of the greatest of $250,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself resulting from the offense, as well as a $100 mandatory special assessment.

Do you understand that so far, Mr. Feng?

THE DEFENDANT:  Understand.

THE COURT:  Okay.  If you are sentenced to a term of imprisonment, even if you are sentenced to the maximum term of imprisonment, you may also be sentenced to a term of supervised release.  That would be served once you are released from prison.  If you were to violate the conditions of your supervised release, you could be sentenced to an additional term of imprisonment for violating the conditions of your supervised release.  In this case that additional term of

imprisonment would be up to two more years in prison.  And if you were to violate the conditions of your supervised release, you would not receive credit for any time already served in prison or for time served on supervised release.

THE DEFENDANT:  Understand.

THE COURT:  Okay.  Now you are also subject in this case to an order of forfeiture and restitution, and in fact, in the plea agreement you have agreed to admit the forfeiture allegation with respect to Count Three of the indictment and you've agreed to forfeit to the United States $50,000 in U.S. currency which represents the value of property which constitutes or is derived from proceeds traceable to the offense charged in Count Three.

You also have agreed to make restitution in an amount ordered by the Court in accordance with Title 18 U.S. Code section 3663.

Mr. Feng, do you understand that these are all of the possible sentences that could be imposed following a guilty plea in this case?

THE DEFENDANT:  Understand.

THE COURT:  Mr. Feng, do you understand that because you are not a United States citizen, your guilty plea means that you may be removed from the United States, denied citizenship, and denied admission to the United States in the future?

THE DEFENDANT:  Understand.

THE COURT:  Do you understand that you are bound by your guilty plea regardless of the immigration consequences of your plea and regardless of any advice you have received from your counsel or others regarding those consequences?

THE DEFENDANT:  Understand.

THE COURT:  Have you specifically discussed the immigration consequences of your plea with Mr. Gold?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Feng, do you also understand that you are pleading guilty to felony offenses and that this adjudication may deprive you of certain civil rights, which may include the right to possess a firearm, the right to be considered for certain types of employment, or to be bonded, or to serve in the United States military, and the right to possess or obtain certain government issued licenses, including licenses that may be required for certain occupations.

THE DEFENDANT:  Understand.

THE COURT:  All right, do you understand, Mr. Feng, that these are possible additional legal consequences that may result from a guilty plea?

THE DEFENDANT:  Understand.

THE COURT:  All right, Mr. Feng, do you understand that the United States Sentencing Commission has issued guidelines for judges to follow in determining the appropriate

sentence in a criminal case?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that these sentencing guidelines are not mandatory but that they must be considered by the Court, along with other factors listed at Title 18 U.S. Code section 3553 when the judge determines the appropriate sentence to impose, including possible departures from the guidelines?

THE DEFENDANT:  Understand.

THE COURT:  Have you and Mr. Gold talked about how the sentencing guidelines would be calculated in your case?

THE DEFENDANT:  Yes.

THE COURT:  All right, now the plea agreement in this case, Mr. Feng, sets forth a stipulated sentencing guidelines range of 12-to-18 months and a stipulated fine range of between $5,500 and $55,000.

Do you understand, Mr. Feng, that this range is simply an agreement between you and Mr. Gold and the US Attorney's office and that it is not binding on the District Judge, in this case Judge Román, when he imposes sentence in your case?

THE DEFENDANT:  Understand.

THE COURT:  Do you understand that Judge Román will consider the guidelines but that he will impose a sentence that is in accordance with the statutes, which in this case means

your prison term will be not be more than 25 years?

THE DEFENDANT:  Understand.

THE COURT:  Do you understand that the Court will not be able to determine the appropriate sentence until after a presentence report has been prepared and until you and Mr. Gold, as well as the government, have had an opportunity to challenge the facts reported in the presentence report, as well as a calculation of the sentencing guideline range and any sentence recommendation in that report?

THE DEFENDANT:  Understand.

THE COURT:  Do you also understand that if there are any objections to the presentence report, that those objections will be ruled on by the Court, and if necessary, a hearing will be held to determine what information is relevant to the Court's determination of the sentence?

THE DEFENDANT:  Understand.

THE COURT:  Okay.  As part of the plea agreement, Mr. Feng, you have agreed to waive certain rights to appeal, and I'm going to review those waivers with you now.  I'll be reading from certain portions of the plea agreement:

First, you have agreed that you will not file a direct appeal or bring a collateral challenge of any sentence that is within or below the stipulated guidelines range of 12-to-18 months imprisonment;

You also have agreed not to appeal or bring a

collateral challenge of any term of supervised release that is less than or equal to the statutory maximum;

You also have agreed not to appeal or bring a collateral challenge of any fine that is less than or equal to $55,000;

You also have agreed not to appeal or to bring a collateral challenge of any forfeiture amount that is less than or equal to $50,000; and

You also have agreed not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $200.

In addition, the plea agreement explains that you have chosen not to request discovery materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure. You agree, as part of this agreement, that if you had not entered this guilty plea, the government would have been required to produce this Rule 16 material and would further be required to produce material pursuant to *Brady v. Maryland* and Rule 5(f) of the Federal Rules of Criminal Procedure, and if your case were to proceed to trial, impeachment material pursuant to *Giglio v. United States*, and *Jencks* Act material. But as part of a plea agreement, Mr. Feng, you have acknowledged that you have not and will not receive any of this information because you have decided to plead guilty and you have waived the right to this information. You've also agreed not to withdraw the plea or to

attack your conviction or sentence on the ground that the government has failed to produce any such information apart from any information that would have established your factual innocence.

Finally, Mr. Feng, you have agreed that you have no right to withdraw your guilty plea based on any actual or perceived adverse immigration consequences resulting from your guilty plea and conviction.

You have also agreed that you will not challenge your conviction or sentence on direct appeal or collaterally on the basis of any actual or perceived adverse immigration consequences, including removal from the United States, that may result from your guilty plea and conviction.

Do you understand that these are the potential appellate rights that you have given up as part of your plea agreement, Mr. Feng?

THE DEFENDANT:  Yes.

THE COURT:  Do you need a drink of water Ms. Wilkinson?  Are you okay?

THE INTERPRETER:  I'm okay.

THE COURT:  Okay.

Mr. Feng, do you also understand that if you disagree with the Court's sentencing decision, that that will not give you a basis for withdrawing your guilty plea?

THE DEFENDANT:  Understand.

THE COURT:  Do you understand that parole has been abolished in the federal system so that if you are sentenced to a term of imprisonment, you will not be eligible for early release on parole?

THE DEFENDANT:  Understand.

THE COURT:  Do you understand that you do not have to plead guilty, Mr. Feng?  You have an absolute right to persist in your plea of not guilty and to have the matter go to trial either before a judge or before a jury.

THE DEFENDANT:  Understand.

THE COURT:  Do you understand if you persist in your plea of not guilty, you are entitled to a speedy and public trial of your case?

THE DEFENDANT:  I understand.

THE COURT:  Do you understand that if there were a trial in this matter, you would be presumed innocent and that that presumption would remain with you until the government proves each and every element of the crimes charged beyond a reasonable doubt to the satisfaction of the judge, if it is a judge-only trial, or to the unanimous satisfaction of the jury, if it is a jury trial?

THE DEFENDANT:  Understand.

THE COURT:  If there were a trial, you would have the right, with the assistance of your attorney, to confront and cross-examine the witnesses against you.  You would have the

right to call witnesses to testify for you and to have subpoenas issued to compel witnesses to give testimony.  You would also have the right to testify and to present evidence at your trial, but you could not be forced to testify.  If you decided not to testify, your decision to remain silent could not be held against you in any way.

THE DEFENDANT:  Understand.

THE COURT:  If there were a trial, Mr. Feng, you would also have the right which I have already mentioned, to the assistance of an attorney and to have an attorney appointed to represent you if you could not afford counsel.

Do you understand that if you plead guilty to the charges in Counts Two and Three of this indictment, that you would give up your right to a trial, and except for the right to counsel, you would also give up all of the other rights that I have explained to you here?

THE DEFENDANT:  Understand.

THE COURT:  All right, Mr. Feng, have you clearly understood, with the capable assistance of Ms. Wilkinson, everything that I have said to you here today?

THE DEFENDANT:  Understand.

THE COURT:  Do you have any questions either for me or for Mr. Gold at this point about anything I have said or anything I have asked you?

THE DEFENDANT:  No.

Angela O'Donnell - Official Court Reporter
(914)390-4025

THE COURT:  Mr. Lockard, is there anything else that the government believes I should review with Mr. Feng at this point?

MR. LOCKARD:  Other than the elements of the offense, no.

THE COURT:  Okay.  Mr. Gold, is there anything further you believe I should review with Mr. Feng from the plea agreement?

MR. GOLD:  I do not.  Thank you.

THE COURT:  All right, thank you.

All right, Mr. Lockard, I'll turn to you, then, to tell us the elements of the offenses in Counts Two and Three of the indictment and what the government is prepared to prove at trial in order to establish those elements.

MR. LOCKARD:  Sure.  Excuse me.  Yes, your Honor.

With respect to Count Two of the indictment, which charges the defendant with acting as an unregistered agent of a foreign power in violation of Title 18 United States Code section 951, that offense has three elements:

First, that the defendant acted in the United States;

Second, that that action was at the direction or under the control of a foreign government; and

Third, that the defendant failed to notify the Attorney General before taking such action.

With respect to Count Three of the indictment, which

charges bribing a public official in violation of Title 18 United States Code section 201(e), that offense has three elements:

First, that the defendant offered, promised, or gave money or something of value;

Second, that the offeree, promisee, or recipient was a public official; and

Third, that the defendant acted with the corrupt intent to influence an official act of that official.

In addition to those elements, the government would also be required to prove by a preponderance of the evidence that venue in the Southern District of New York is proper.

At a trial the government would prove the elements of the charged offenses beyond a reasonable doubt, as well as venue by a preponderance of the evidence through physical evidence, documents, video and audio recordings, intercepted telephone conversations, and photographs, as well as witness testimony that would show in substance that beginning in at least approximately January of 2023, the defendant worked with others to target the Falun Gong, a religious practice that is banned in China and which has their worldwide headquarters in Orange County, New York.

Feng's co-defendant, John Chen, sought to bribe an Internal Revenue Service agent to advance a defective whistleblower complaint against a Falun Gong run charitable

entity called the Shen Yun Performing Arts in an effort to revoke the tax exempt status of that organization.  Chen enlisted the defendant in this effort targeting the Falun Gong and the defendant joined the plot.

As part of the plot, Mr. Chen engaged in text, email, and telephone conversations with an individual whom the defendant and his co-defendant believed to be an IRS agent and who, in fact, was an undercover law enforcement officer with the United States department of the treasury.

The defendant and Mr. Chen traveled from California, where they both reside, to Newburgh, New York to meet with the undercover about the whistleblower complaint.  Prior to and after his arrival in New York, the defendant communicated with Mr. Chen about the purpose of their meeting, the fact that they were acting on behalf of a government official with the Peoples Republic of China, and that the government of the Peoples Republic of China had been fighting against the Falun Gong (indiscernible).

They also discussed what to do if there was a surprise in their meeting with the undercover and that Feng should sound the alarm with the government of the Peoples Republic of China if that occurred.

At a meeting with the undercover in approximately May of 2023, Mr. Chen delivered $1,000 in United States currency to the undercover as an initial bribe payment and in

the defendant's presence discussed further payments of $50,000 if the undercover opened an audit of the Shen Yun Performing Arts, as well as payment to the undercover at 60 percent of any whistleblower recovery if the tax complaint were successful.

The following day the defendant traveled with Mr. Chen to an IRS office in Newburgh where Mr. Chen and the undercover met to discuss the whistleblower complaint.  After this meeting, the defendant and his co-defendant returned to California where Mr. Chen kept the defendant updated about the status of the whistleblower complaint.  And after a few days the defendant flew back to John F. Kennedy Airport to deliver an additional $4,000 in U.S. currency to the undercover and told the undercover he would make additional flights to New York to deliver payments for Mr. Chen.

THE COURT:  Okay, thank you, Mr. Lockard.

Mr. Feng, did you hear and understand everything that Mr. Lockard just described?

THE DEFENDANT:  Yes, I heard.

THE COURT:  At this time, how do you wish to plead to the charges in Counts Two and Three of the indictment?

THE DEFENDANT:  Yes, I plead guilty to what he said.

THE COURT:  Okay.  Mr. Feng, has anyone threatened you or coerced you or pressured you improperly in order to get you to plead guilty to these charges?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any promises to you other than what is set forth in the plea agreement in order to induce you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any specific promises to you about what the sentence of the Court will be?

THE DEFENDANT:  No.

THE COURT:  Okay, Mr. Feng, please tell me in your own words what you did to commit these crimes.

THE DEFENDANT:  Okay.

THE COURT:  Okay, just hold on one second.

THE DEFENDANT:  Between January and May 2023, I helped try to get the IRS to investigate the Falun Gong group in the United States.  At this time I was aware that the Chinese government wanted to hurt the Falun Gong group.

I admit that in order to try to get the IRS to investigate the Falun Gong, I pay someone who I thought was an IRS agent a bribe.  I understand that by delivering the money which have been given to me by Mr. Chen, the IRS would audit and hurt the Falun Gong group.

I did this with John Chen because he's my boss.  I worked for him.  I worked for him.  So I actively worked with Mr. Chen.  I actively worked with him to try to get the IRS to investigate the Falun Gong.  Specifically, we spoke about this.  And so specifically we spoke about this together, that is, I

helped Mr. Chen meet with someone in Newburgh, New York, on May 14, 2023.  And so we met with this person and spoke with this person.

So the thing is that while working with Mr. Chen on this case, I was only searching at the background, and so Mr. Chen was the person that he spoke with the man and we thought that who we thought was the IRS agent.  And so while I was working with Mr. Chen on this case, I was aware that Mr. Chen was working for someone important -- some important people in China, people that -- who work at the Chinese government or at some Chinese businesses.  Because this was told to me by Mr. Chen.  So I would repeat, I say that again, working with Chinese government and Chinese businesses.

I knew this because Mr. Chen, it was what Mr. Chen told me.  Because sometimes I would be included in phone calls with the people in China, and at that time I was aware that these people wanted Chen to do something, try to do something to hurt the Falun Gong group.  So I then helped Chen to do this.  So I mean that I then helped Chen to do this by delivering the IRS agent Mr. Chen's money.  That took place on May 18, 2023, at JFK airport.  I did not have permission, I understand that I did not have the permission from the U.S. government to have Mr. Chen to do the work of important people in the Chinese government and the Chinese business community.

That's all I want to say.

THE COURT:  Okay, thank you, Mr. Feng.

Mr. Feng, did you commit these acts that you've described knowingly and willfully?

THE DEFENDANT:  Yes.

THE COURT:  And did you know that it was against the law to do what you were doing?

THE DEFENDANT:  Yes.

THE COURT:  Okay, Mr. Lockard, is there anything else that you believe the Court needs to elicit from Mr. Feng before making a Rule 11 recommendation?

MR. LOCKARD:  I would request one clarification. When the defendant says that he was aware that his and Mr. Chen's actions were being directed by important people within the Chinese government or Chinese businesses, to clarify whether he understood that it was either one or the other and did not know which or did he believe it was both?

THE COURT:  Okay, I think he amended that comment, because I took note of that as well.  I think he amended the comment and said that he understood that Mr. Chen was receiving direction from people in the Chinese government and the Chinese business community.  But let me just make sure.  I'll clarify with a question, because I understand the concern.

Mr. Feng, you explained earlier that Mr. Chen was receiving direction from what you referred to as important people in government and important people in business.  Was it

your understanding that it was both people in government, in the Chinese government, and the Chinese business community? Did I understand you correctly?

THE DEFENDANT:  Both.

THE COURT:  Both.  Okay.  Thank you, Mr. Feng.

Mr. Lockard, is that satisfactory for the government?

MR. LOCKARD:  Yes, your Honor.  Nothing further.

THE COURT:  Okay.

Mr. Gold, is there anything else that you believe the Court needs to elicit from Mr. Feng before making a Rule 11 recommendation?

MR. GOLD:  No, thank you, your Honor.

THE COURT:  Okay.

And Mr. Lockard, do you know of any reason why the Court should not recommend acceptance of Mr. Feng's guilty plea at this time?

MR. LOCKARD:  I do not, your Honor.

THE COURT:  Mr. Gold?

MR. GOLD:  No.

THE DEFENDANT:  All right.

THE COURT:  Mr. Feng, in light of everything that has been said here today, is it still your wish to plead guilty to the charges contained in Counts Two and Three of the indictment?

THE DEFENDANT:  Yes.

Angela O'Donnell - Official Court Reporter
(914)390-4025

THE COURT: Mr. Feng, on the basis of your allocution and your responses to my questions here today, I find that you are fully competent and capable of entering an informed plea. I am satisfied that you understand your rights, including your right to go to trial and that you are aware of the consequences of your plea, including the sentence that may be imposed.

Based on your plea allocution, Mr. Feng, I find that your plea is knowing and voluntary and that it supported by an independent factual basis for each and every element of the crimes charged. Accordingly, I respectfully report and recommend to Judge Román that Mr. Feng's plea be accepted and that he be adjudged guilty of the offenses charged in Counts Two and Three of the indictment.

I direct that a presentence investigation be conducted by the United States Department of Probation and that a presentence report be prepared.

Within 14 days from today, Ms. Brown, that is August 1st, no August 8th. I'm sorry.

THE DEPUTY CLERK: August 8th.

THE COURT: August 8th. So no later than August 8th, Mr. Gold, please contact the Department of Probation to arrange an interview with Mr. Feng with a probation officer.

Mr. Feng, I'm sure you'll be assisted by Mr. Gold in connection with that interview. You must be fully honest and truthful during that interview, because if it comes to the

Angela O'Donnell - Official Court Reporter
(914)390-4025

Court's attention you have provided false, incomplete, or misleading information, that may be held against you at the time of the sentencing.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  All right, Mr. Lockard, the prosecution case summary for purposes of the presentence report is to be delivered to the Probation Department by no later than August 8th.

I will also direct the Clerk of Court to provide a transcript of these proceedings within 30 days setting forth my report and recommendation to Judge Román.

In accordance with our standard practice here in White Plains, the transcript is to come to me first for review.

This matter is adjourned for sentencing.  We have a sentencing date from Judge Román's chambers of October 31st at 10:00 a.m.  If that date is problematic at all, please contact Judge Román's chambers.

I'll note, Mr. Gold, the sentencing guidelines range 12-to-18 months, I don't know exactly what date Mr. Feng was arrested but we're probably within that 12-to-18-month period already, right?

MR. GOLD:  Well within, and I've been discussing with Mr. Feng and we're going to try to speed up the probation process with the hope we can get that earlier sentencing date.

THE COURT:  With the hope you can get an earlier sentencing date.

So I will just ask the Probation Department to do everything that it possibly can to accelerate the process of preparing the presentence report for Mr. Feng in light of the fact that the sentencing guidelines range for Mr. Feng as stipulated to by the parties in the plea agreement is 12-to-18 months, and I believe that Mr. Feng has been in custody since approximately May of 2023, which means that he's already in custody for 14 months.  And so we're getting close to the end of that range, and in fact, an October 31 sentencing date would be almost at the very end of that 18-month range.  Of course, Judge Román is not bound by that range, as we discussed, but to the extent that the process can be accelerated in light of those factors, I will direct the Probation Department to do its best to move the process along.

MR. GOLD:  That is very much appreciated.  Thank you, your Honor.

THE COURT:  Mr. Lockard, is there anything further that we should address today from the government's perspective?

MR. LOCKARD:  No, thank you, your Honor.

THE COURT:  Mr. Feng, Mr. Gold, anything further we should address from Mr. Feng's perspective?

MR. GOLD:  No, thank you.

THE COURT:  Thank you, counsel.

Thank you, Mr. Feng.

Critically, thank you, Ms. Wilkinson, for your help today.

All right, we'll stand adjourned.  Thanks everybody.

o0o

CERTIFICATE:  I hereby certify that the foregoing is a true and accurate transcript, to the best of my skill and ability, from my stenographic notes of this proceeding.

_____
Angela A. O'Donnell, RPR, Official Court Reporter, USDC, SDNY