UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x
UNITED STATES OF AMERICA,

                                        23 CR 286 (NSR)(AEK)

     -vs-
                                        PLEA

JOHN CHEN,

                          Defendant(s).
----------------------------------------x

     *Proceedings recorded via digital recording device*

                              United States Courthouse
                              White Plains, New York

                              July 24, 2024

B e f o r e:   THE HONORABLE ANDREW E. KRAUSE,
                                   Magistrate Judge


A P P E A R A N C E S:


DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
MICHAEL D. LOCKARD
     Assistant United States Attorney


LAW OFFICE OF JULIE RENDELMAN, LLC
JULIE RENDELMAN
     Attorney for Defendant


ALSO PRESENT:


BRENDA CHEN, Chinese Interpreter

THE DEPUTY CLERK:  Good afternoon, all.  This is the matter of USA v. Chen, docket no. 23 cr 286, the Honorable Andrew Krause presiding.

Counsel, note your appearance for the record, starting with the Government.

MR. LOCKARD:  Good afternoon, your Honor.  Assistant U.S. Attorney Michael Lockard for the Government.

THE COURT:  Good afternoon, Mr. Lockard.

MS. RENDELMAN:  Julie Rendelman for Mr. Chen.  Good afternoon, Judge.

THE COURT:  Good afternoon, Ms. Rendelman.

Ms. Rendelman, do we have the Consent To Proceed Before A Magistrate Judge form?

(Discussion off the record)

THE COURT:  Mr. Chen, good afternoon to you.

There's one more form that you need to fill out before we can proceed, so I'm going to let you discuss that with Ms. Rendelman, with the assistance of Ms. Chen.  I'm going to step down off of the bench just for the two to three minutes that it will take to complete that form, and then we'll proceed as soon as we've done that.  Okay?

Okay, thank you.  I'll be right back.

(Recess taken)

THE COURT:  Okay, we'll pick up where we left off.

Ms. Chen, are you -- can you just introduce yourself

for the record as well.

THE INTERPRETER:  Good afternoon, your Honor.  I am the court interpreter.  My name is Brenda Chen.

THE COURT:  Good afternoon, Ms. Chen.  And are you a federally certified interpreter?

THE INTERPRETER:  Yes, yes.

THE COURT:  Okay, very good.

All right, Mr. Chen, again, my name is Judge Krause. I know we've met before, but it's been some time.

I want to advise you that today's proceeding is not a trial.  It is my understanding that you have decided to enter a guilty plea.  This proceeding is for the purpose of ensuring that you are aware of your rights in connection with your plea and that any waiver of those rights is knowing and voluntary prior to you entering your guilty plea.

If at any time, Mr. Chen, you do not understand what I am saying to you with the assistance of the interpreter, please let me know and I'll repeat and explain it further.  If you want to confer with Ms. Rendelman at any time regarding anything I say or anything that I ask you, please let me know that as well and we'll make time for you to do that.

Do you understand that?

THE DEFENDANT:  Understand.

THE COURT:  Okay.

Mr. Chen, I want to advise you that you have the right

to be represented by counsel throughout the entire case, and you may consult with your attorney at any stage of this proceeding. You also have the right to remain silent.  Any statement that you do make may be used against you.  You have this right to remain silent even if you have already made statements to law enforcement officers.

THE COURT: Do you understand that?

THE DEFENDANT:  I need to speak, right?

THE COURT:  Yes, and so the question is just do you understand what I've asked you.

THE DEFENDANT:  Yes, I understand whatever you told me.

THE COURT:  Okay.

And I should also just say, Ms. Chen, if at any time you need me to slow down or repeat myself, please let me know that as well, okay?

THE INTERPRETER:  Yes, your Honor, I will.

THE COURT:  All right.

Okay, Ms. Brown, will you please place Mr. Chen under oath or affirmation.

THE DEPUTY CLERK:  Mr. Chen, please raise your right hand.

JUN CHEN,

Sworn.

THE COURT:  Okay, you can be seated, Mr. Chen.  Thank

you.

It is important for you to understand, Mr. Chen, that if you knowingly make a false statement during this proceeding, you could be subject to prosecution for perjury or for making a false statement to the Court and you could face a punishment of up to five years in prison and a $250,000 fine if you were to be convicted of that crime of perjury.  That punishment would be separate and apart from any sentence that you may be facing on the crimes charged in the Indictment that has brought us here today.

Do you understand that?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Okay, Mr. Chen, can you please state your full name for the record.

THE DEFENDANT:  Jun Chen.  J-U-N, C-H-E-N.

THE COURT:  How old are you, Mr. Chen?

THE DEFENDANT:  I was born in 1952.  This year, I'm 72.

THE COURT:  Okay.  And are you a citizen of the United States, Mr. Chen?

THE DEFENDANT:  Yes.

THE COURT:  Are you a citizen of any country other than the United States?

THE DEFENDANT:  No, no, no, I'm only a citizen in United States.

THE COURT:  Okay.

How far did you go in formal school, Mr. Chen?

THE DEFENDANT:  College, university.

THE COURT:  All right.

Are you currently or have you recently been under the care of a doctor, psychiatrist, or a psychologist for any reason?

THE DEFENDANT:  I only have diabetes and high blood pressure.  No other problems.

THE COURT:  Okay.  And does -- do either of those conditions have any ability -- any impact on your ability to think clearly or understand things or make decisions?

THE DEFENDANT:  No.

THE COURT:  Okay.

Have you taken any mind-altering drugs, alcohol, or medication in the last 24 hours, Mr. Chen?

THE DEFENDANT:  Nothing, nothing.

THE COURT:  All right.  Is your mind clear here today, Mr. Chen?

MS. RENDELMAN:  One moment.

THE COURT:  Of course.

(Counsel consults with Defendant)

THE DEFENDANT:  I'm okay.  I'm clear.

THE COURT:  Okay.  Do you understand what is happening at this proceeding today?

THE DEFENDANT:  (Indiscernible).

THE COURT:  Yes, okay.  Fine.

Mr. Lockard, does the Government have any objection or concern with respect to Mr. Chen's ability to plead at this time?

MR. LOCKARD:  No, your Honor.

THE COURT:  Ms. Rendelman, any concerns on your part?

MS. RENDELMAN:  No, your Honor.

THE COURT:  All right.

Mr. Chen, this proceeding is called a plea allocution. I want you to understand that you have an absolute right to have this plea allocution conducted before a United States District Judge.  It is the District Judge, in this case Judge Román, who will impose the sentence in your case.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.

I am a United States Magistrate Judge.  If you consent, then I will conduct the plea allocution and I will make a report to the District Judge, and in that report, I will recommend whether or not Judge Román should accept your guilty plea.  I will make that recommendation based on the information that is brought out during today's proceedings.

It is important for you to understand that the Court will not accept your guilty plea unless the Court is satisfied

that you understand all your rights and that you are, in fact, guilty. Do you understand that, Mr. Chen?

THE DEFENDANT: Yes, I do.

THE COURT: Okay.

Now, I have before me what we refer to as the Consent To Proceed Before A Magistrate Judge On A Felony Plea Allocution. This is the form that you just went over with Ms. Rendelman and Ms. Chen.

Is this your signature on the form, Mr. Chen?

THE DEFENDANT: Yes.

THE COURT: Okay. And what this form says, in sum and substance, is that you understand that you have the right to have this plea taken by a United States District Judge, but that you are agreeing to have the plea taken by me, a United States Magistrate Judge instead.

Is that correct, Mr. Chen?

THE DEFENDANT: Yes.

THE COURT: Before you signed the form, did Ms. Rendelman explain it to you, with the assistance of Ms. Chen, the interpreter?

THE DEFENDANT: Yes, my attorney and my interpreter, they are doing a good job. Thank you.

THE COURT: Okay, excellent. I'm glad to hear that.

Did anyone threaten you or coerce you or promise you anything in order to get you to sign the consent form?

THE DEFENDANT:  No, no, we are very friendly here.

THE COURT:  Okay.  Did you sign the form freely and voluntarily, Mr. Chen?

THE DEFENDANT:  I signed --

MS. RENDELMAN:  One moment --

THE DEFENDANT:  -- it willingly.

MS. RENDELMAN:  -- your Honor?

THE COURT:  Willingly, okay.

You can take a second, Ms. Rendelman.  Go ahead.

MS. RENDELMAN:  Thank you.  One moment?

THE COURT:  Absolutely.

(Counsel consults with Defendant)

MS. RENDELMAN:  Thank you, your Honor.

THE COURT:  Okay, very good.

Mr. Lockard, do you know of any reason why the waiver and consent to proceed with this plea allocution before a Magistrate Judge should not be accepted?

MR. LOCKARD:  No, your Honor.

THE COURT:  Ms. Rendelman?

MS. RENDELMAN:  I do not.

THE COURT:  Okay.

Mr. Chen, I find that you are fully competent and that you understand the proceedings before you here today.  I also find that you are capable of waiving your right to appear before a United States District Judge in order to enter your guilty

plea, and I therefore accept the consent form, which has been signed and is now part of the Court record.

The consent form will be marked as Court Exhibit 1 and will remain in the Court file.

Now, Mr. Chen, I understand that you wish to change your plea and to enter a plea of guilty as to two of the counts in the Indictment; is that correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.

Before deciding whether or not to accept your guilty plea, Mr. Chen, I'm going to ask you a series of questions.  It is very important that you answer these questions honestly and completely.

The purpose of these proceedings is to make sure that you understand your rights, to decide whether you are pleading guilty of your own free will, and to make sure that you are pleading guilty because you are guilty and not for some other reason.

Do you understand that, Mr. Chen?

THE DEFENDANT:  I understand.

THE COURT:  Okay.

If you do not understand any of my questions today, Mr. Chen, please let me know, because it is important that you understand every question before you answer.  Okay?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Okay.

Now, the Indictment that we are going to review today contains a number of charges, but because, as part of the plea agreement, you have agreed to plead guilty only as to two of the counts in the Indictment, I'm going to focus our review of the Indictment on those two counts to which you intend to plead guilty.

Do you understand that, Mr. Chen?

THE DEFENDANT:  Yes.

THE COURT:  All right.

So in the Indictment that I have before me here today, you are charged with...several counts, but specifically in Count Two, you are charged with the offense of acting as an agent of a foreign government and a foreign official without prior notification to the Attorney General, in violation of Title 18 U.S. Code §§ 951 and 2.

Count Three of the Indictment charges you, Mr. Chen, with bribing a public official, in violation of Title 18 U.S.C. § 201 (b)(1) and also § 2 of Title 18.

Mr. Chen, have you received a copy of the Indictment?

THE DEFENDANT:  Yes.

THE COURT:  Have you had the opportunity to review the indictment with your attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  And have -- do you understand what it says

or have you been informed as to what it says with the assistance of an interpreter?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Chen, do you want me to read the entire indictment again to you here in open court today?

(Counsel consults with Defendant)

THE DEFENDANT:  No, your Honor.

THE COURT:  Okay.

Mr. Chen, have you had sufficient time to speak with Ms. Rendelman about the charges in the Indictment and about how you wish to plead?

THE DEFENDANT:  Yes, yes.

THE COURT:  Have you discussed with Ms. Rendelman the charges against you, including the charges to which you intend to plead guilty, as well as the other charges that the Government made or may have made in the case?

THE DEFENDANT:  Yes.

THE COURT:  Has Ms. Rendelman told you the consequences of pleading guilty, Mr. Chen?

THE DEFENDANT:  Yes, she made everything very clear.

THE COURT:  Okay.  Are you satisfied with Ms. Rendelman's representation of you up until this point, Mr. Chen?

THE DEFENDANT:  Very satisfied.

THE COURT:  Okay, and have you told Ms. Rendelman

everything that you know about this case?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

I have a plea agreement here before me.  It is dated May 26th, 2024.  The plea agreement is seven pages long and it's signed on the last page by Mr. Lockard; by Perry Carbone, the Chief of the White Plains Division of the U.S. Attorney's Office; and there are several signatures which are dated today, July 24th, 2024.  One is the signature of Ms. Rendelman, one is the signature of Ms. Chen, and then there's what I believe is your signature.

Mr. Chen, is this your signature on the plea agreement here?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

The plea agreement will be marked as a Government exhibit and the original plea agreement will remain in the custody of the U.S. Attorney's Office.

Mr. Chen, have you read the plea agreement which is dated May 26th, 2024, or reviewed it with the assistance of an interpreter?

THE DEFENDANT:  Yes.

THE COURT:  Have you also reviewed the plea agreement with your attorney?

THE DEFENDANT:  Yes, I have.

THE COURT:  All right.

Ms. Rendelman, did you review each and every part of the plea agreement with Mr. Chen?

MS. RENDELMAN:  I did, and I did so with an interpreter as well.

THE COURT:  Thank you.

Mr. Chen, are you satisfied that you understand the entire plea agreement which Ms. Rendelman has reviewed with you?

THE DEFENDANT:  Yes.

THE COURT:  All right, we're going to review certain parts of the plea agreement in greater detail here today, but for now, let me ask you whether you have any questions either for Ms. Rendelman or for me about what the plea agreement says.

THE DEFENDANT:  No questions.

THE COURT:  Okay.

Mr. Chen, does the plea agreement contain the complete agreement between you and the Government in connection with this case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that anything that is not set forth in the plea agreement or which is not told to me at this time on the record will not be binding on the outcome of your case?

THE DEFENDANT:  Yes, I understand.

THE COURT:  All right.

Mr. Lockard, is there anything beyond the written plea agreement that the Court should be aware of?

MR. LOCKARD:  No, your Honor.

THE COURT:  Ms. Rendelman, are there any other agreements that the Court should know about?

MS. RENDELMAN:  No, your Honor.

THE COURT:  All right.

Mr. Chen, did you sign the plea agreement freely and voluntarily?

THE DEFENDANT:  Yes.

THE COURT:  Did anyone force you or coerce you or threaten you or promise you anything other than what is set forth in the plea agreement in order to get you to sign the plea agreement?

THE DEFENDANT:  No, no.

THE COURT:  Okay.

Now, Mr. Chen, if you are convicted of the charges in this Felony Indictment, either after trial or by a plea of guilty, you would be subject on Count Two of the Indictment to a maximum term of imprisonment of ten years, a maximum term of supervised release of three years, a maximum fine, pursuant to Title 18 U.S.C. § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself resulting from the offense, as well as a $100 mandatory special assessment.

On Count Three of the Indictment, that count carries a maximum term of imprisonment of 15 years, a maximum term of supervised release of three years, and the same maximum fine that I just described for Count Two of the Indictment.

Do you understand that so far, Mr. Chen?

THE DEFENDANT:  Yes, I understand.

THE COURT:  All right.

Now, if you were sentenced to a term of imprisonment, even if you were sentenced to the maximum term of imprisonment, you may also be sentenced to a term of supervised release.  If you were to then violate the conditions of your supervised release once you are out of prison, you could be sentenced to an additional term back in prison for violating the conditions of your supervised release.  In this case, because of the specific charges involved here, the additional term of imprisonment could be up to one additional year in prison.

I'm sorry, that's my mistake.  Here, the additional term of imprisonment could be up to two additional years in prison because of the nature of the charges.  I apologize.

If you were to violate the conditions of your supervised release, you would not receive credit for any time already served in prison or for time that you served on supervised release.

Do you understand that so far, Mr. Chen?

(Counsel consults with Defendant)

THE DEFENDANT:  For the probation, is there a document for me to sign?

THE COURT:  Do you mean when you are -- well, what happens, ultimately, after you are sentenced by Judge Román in this case, which will happen several months from now in the future, there will be a document that specifies the exact terms of your sentence and the exact terms of your supervised release, how long the sentence is going to be and what the conditions of the supervised release will be, so all of that will be ultimately provided to you in a document that's called a judgment, and Ms. Rendelman will be able to review that with you, with the assistance of an interpreter if necessary.

And then, if you are serving a term of supervised release at some point in the future, you will have regular meetings with an officer from the United States Department of Probation, and that person will explain to you what the specific things are that you are required to do and so there will be plenty of information.  Whether there is something that you will actually sign or not, I don't think so?

Mr. Lockard, you can correct me if I'm wrong.

But there will be, certainly, information provided to you so you don't have to remember it all or certainly remember what we talk about today, because those terms, once they're imposed, you'll receive information about that in writing.

Mr. Lockard, anything to add on that explanation from

the Government's perspective?

MR. LOCKARD:  No, your Honor.  I think that fairly captures the substance of supervised release.

THE COURT:  Okay, well, I just want to make sure that I'm covering everything.

Ms. Rendelman, is there anything else that you think I should address there?

MS. RENDELMAN:  No, your Honor.  Thank you.

THE COURT:  All right.

Now, Mr. Chen, you are also subject to the possibility of forfeiture and restitution as part of the sentencing in this case, and, in fact, as part of the plea agreement, you have admitted the forfeiture allegation in the Indictment with respect to Count Three and you have agreed to forfeit to the United States a total of $50,000 in United States currency, which, according to the plea agreement, represents the value of property which constitutes or is derived from proceeds traceable to the offense charged in Count Three, which is the bribery charge.

The plea agreement also specifies that you agree to make restitution in an amount to be ordered by the Court, in accordance with Title 18 U.S.C. § 3663.

So we've covered now, Mr. Chen, the possible sentence of imprisonment, the possible fine, the possibility of supervised release, and the penalties of violating -- and the

USA v. Chen

penalties for violating supervised release, and we've also covered the forfeiture and restitution issues.

Do you understand that these are the possible sentences that the Court could impose following a guilty plea in this case?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.

Do you also understand, Mr. Chen, that you are pleading guilty to a felony offense and that this adjudication may deprive you of certain civil rights which may include the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any type of firearm, the right to be considered for certain types of employment or to be bonded or to serve in the United States military, and the right to possess or obtain certain government-issued licenses, including licenses that may be required in certain professions and occupations?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand that these are additional legal consequences that may result from your guilty plea in this case?

You just have to say so out loud, Mr. Chen.

THE DEFENDANT:  Yes.

THE COURT:  Okay.

Do you understand that the United States Sentencing

Commission has issued guidelines for judges to follow in determining the appropriate sentence in a criminal case?

THE DEFENDANT:  Yes.

THE COURT:  Do you also understand that these sentencing guidelines are not mandatory, but that they must be considered by the Court, along with other factors listed at Title 18 U.S.C. § 3553, when Judge Román determines the appropriate sentence to impose, including possible departures from the sentencing guidelines?

THE DEFENDANT:  Yes.

THE COURT:  Have you and Ms. Rendelman talked about how the sentencing guidelines will be calculated in your case?

THE DEFENDANT:  Yes.

THE COURT:  Now, the plea agreement in this case sets forth a stipulated sentencing guidelines range of 24 to 30 months and a stipulated fine range of between $10,000 and $95,000.

Do you understand, Mr. Chen, that this range is simply an agreement between you and your attorney and the U.S. Attorney's Office and that it is not binding on the District Judge, that is, Judge Román, when he imposes sentence in your case?

THE DEFENDANT:  I understand.

THE COURT:  Okay.

Do you understand, Mr. Chen, that Judge Román will

consider the sentencing guidelines, but that he will impose a sentence that is in accordance with the statutes in this case, which means that your prison term will not be more than 25 years in total?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.

Do you understand, Mr. Chen, that the Court will not be able to determine the appropriate sentence until after a pre-sentence report has been prepared and until you and your attorney, as well as the Government, have an opportunity to challenge the facts reported in the pre-sentence report, as well as the calculation of the sentencing guideline range and any sentence recommendation in that report?

THE DEFENDANT:  I understand.

THE COURT:  Do you also understand that if there are any objections to the pre-sentence report, that those objections will be ruled on by the Court and if necessary, a hearing will be held to determine what information is relevant to the Court's determination of the sentence?

THE DEFENDANT:  Yes.

THE COURT:  All right.

Now, Mr. Chen, as part of the plea agreement, you have agreed to waive certain rights to appeal, and I'm going to review those waivers with you specifically now by reading certain portions of the plea agreement.

Now, you have agreed, Mr. Chen, that you will not file a direct appeal or bring a collateral challenge of any sentence that is within or below the guidelines range or stipulated guidelines range of 24 to 30 months imprisonment.  You have also agreed not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum.

You have also agreed not to appeal or bring a collateral challenge of any fine that is less than or equal to $95,000.  You also have agreed not to appeal or bring a collateral challenge of any forfeiture amount that is less than or equal to $50,000, and you have agreed not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $200.

Do you understand that so far, Mr. Chen?

THE DEFENDANT:  Yes, I understand all of this.

THE COURT:  Okay.

Now, the plea agreement also recites that you, Mr. Chen, in consultation with your attorney, have chosen not to request discovery materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

You have indicated that you understand that if it were not for your guilty plea, the Government would be required to produce certain materials to you under Rule 16, pursuant to *Brady v. Maryland*, and pursuant to Rule 5(f) of the Federal

Rules of Criminal Procedure, and also, that you would be entitled to receive impeachment material pursuant to *Giglio v. United States* and Jencks Act material if the case were to proceed to trial.

In the plea agreement, you have acknowledged that you have not and will not receive this information because you have decided to plead guilty. You are waiving the right to the information and you are agreeing not to withdraw your plea or to attack your conviction or sentence on the ground that the Government has failed to produce any of this information, apart from any information that would establish your factual innocence.

Do you understand that, Mr. Chen?

THE DEFENDANT: Yes, I do.

THE COURT: Okay.

And do you understand that if you disagree with the Court's sentencing decision, that that will not give you a basis for withdrawing your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Do you also understand that parole has been abolished in the federal system, so if you were sentenced to a term of imprisonment, you would not be eligible for early release on parole?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you do not have to

plead guilty, Mr. Chen; you have an absolute right to persist in your plea of not guilty and to have the matter go to trial either before a judge or before a jury?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that if you persist in your plea of not guilty, you are entitled to have a speedy and public trial of your case?

THE DEFENDANT:  I want to plead guilty.

THE COURT:  Okay.  We're almost there, Mr. Chen.

Do you understand that at any trial in this case, you would be presumed innocent and that that presumption would remain with you until the Government proves each and every element of the crimes charged beyond a reasonable doubt to the satisfaction of the judge if it is a judge-only trial or to the unanimous satisfaction of the jury if it is a jury trial.

THE DEFENDANT:  Yes, I do.

THE COURT:  If there were a trial, Mr. Chen, you would have the right, with the assistance of your attorney, to confront and cross-examine the witnesses against you.  You would have the right to call witnesses to testify for you and to have subpoenas issued to compel witnesses to give testimony.

You would also have the right to testify and present evidence at your trial, but you could not be forced to testify. If you decided not to testify, your decision to remain silent could not be held against you in any way.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Again, if there were a trial, you would also have the right, which I have already mentioned, to the assistance of an attorney and to have an attorney to represent you if you could not afford counsel.

Do you understand that if you plead guilty to the charges in this Indictment, in Counts Two and Three, that you would give up your right to a trial, and except for the right to counsel, you would also give up all of the other rights that I have explained to you here?

THE DEFENDANT:  Yes.

THE COURT:  All right.

Mr. Chen, have you clearly heard and understood, with the expert assistance of Ms. Chen, everything that I have said to you here today?

THE DEFENDANT:  Very good, satisfied.

THE COURT:  Okay.  And at this point, do you have any questions for me or for Ms. Rendelman about anything that I have said or about anything that I have asked you today?

THE DEFENDANT:  No questions.

THE COURT:  All right.

Mr. Lockard, is there anything else that the Government believes I should review with Mr. Chen from the plea agreement?

MR. LOCKARD:  No, your Honor.

THE COURT:  Ms. Rendelman?

MS. RENDELMAN:  No, your Honor.

THE COURT:  Okay.

Now, Mr. Lockard, let me turn to you.  Please tell us, what are the elements of the offenses to which Mr. Chen is intending to plead guilty and what is the Government prepared to prove at trial in order to establish those elements.

MR. LOCKARD:  With respect to Count Two of the Indictment, which charges the Defendant with acting as an unregistered agent of a foreign power, in violation of Title 18 U.S.C. § 951, the elements of that offense are:

First, that the Defendant acted in the United States;

Second, that the Defendant's action was at the direction or under the control of a foreign Government; and

Third, that the Defendant failed to notify the Attorney General before taking such action.

With respect to Count Three of the Indictment, which charges the Defendant with bribing a public official, in violation of Title 18 U.S.C. § 201, the elements of that offense are:

First, that the Defendant offered, promised, or gave money or something of value;

Second, that the offeree, promisee, or recipient was a public official; and

Third, that the Defendant acted with the corrupt intent to influence an official act of that official.

At trial, the Government would prove the elements of these offenses beyond a reasonable doubt through physical evidence, documentary evidence, video and audio recordings, intercepted telephone conversations and photographs, as well as witness testimony that would show that beginning in at least January of 2023, the Defendant worked with others to target the Falun Gong, a religious practice that is banned in China and which has their worldwide headquarters in Orange County, New York, in the Southern District of New York.

As part of that, Chen sought to bribe an IRS agent to advance a defective whistleblower complaint against a Falun Gong-run charitable entity called Shen Yun Performing Arts in an effort to cause the revocation of the tax-exempt status of that organization.

As part of the offense, Chen engaged in text, email, and telephone conversations with an individual whom Chen believed to be an IRS agent and who, in fact, was an undercover law enforcement officer with the United States Department of the Treasury.  Chen and his co-defendant, Lin Feng, traveled from California, where Chen resides, to Newburgh, New York, in order to meet with the undercover about the whistleblower complaint against Shen Yun Performing Arts.

Prior to and after his travel, Chen communicated with

Feng about the purpose of their meeting and the fact that they were acting on behalf of a government official with the People's Republic of China and that the government of the People's Republic of China had been fighting against the Falun Gong for decades.

At a meeting with the undercover in approximately May of 2023, Chen delivered $1,000 in United States currency to the undercover as an initial bribe payment to advance the whistleblower complaint and promised further payments of $50,000 if a tax audit of the Shen Yun Performing Arts was opened, as well as sixty percent of any whistleblower recovery if the tax complaint were successful.

The following day, the Defendant met with the undercover at an IRS office, also in Newburgh, New York, to discuss the whistleblower complaint, and the Defendant's co-defendant later delivered an additional $4,000 to the undercover.

THE COURT:  Okay, thank you, Mr. Lockard, and also, just -- do you want to make note of the venue requirement as well?

MR. LOCKARD:  Yes, your Honor.

The Government would also be required to prove that venue is proper in the Southern District of New York by a preponderance of the evidence, which will be satisfied by, among other things, the Defendant's communications with the undercover

while the undercover was in the Southern District of New York and by Mr. Chen's participation in meetings and other conduct in furtherance of the offenses in Newburgh, which is in the Southern District of New York.

THE COURT:  Okay.  Thank you very much, Mr. Lockard.

Mr. Chen, did you hear and understand everything that Mr. Lockard just said?

THE DEFENDANT:  Yes, I heard everything.

THE COURT:  Okay.  And at this time, how do you wish to plead to the charges in Count Two and Count Three of the Indictment?

THE DEFENDANT:  I plead guilty.

THE COURT:  Mr. Chen, has anyone threatened you or coerced you or pressured you improperly in order to get you to plead guilty to these charges?

THE DEFENDANT:  Nobody, nobody coerce me or threaten me.

THE COURT:  Okay.  Has anyone made any promises to you other than what is set forth in the plea agreement in order to induce you to plead guilty?

THE DEFENDANT:  No.

THE COURT:  Has anyone made any specific promises to you, Mr. Chen, about what the sentence of the Court will be?

THE DEFENDANT:  Nobody, nobody promised me anything.

THE COURT:  Okay.

Mr. Chen, please tell me in your own words what you did to commit these crimes.  And I see you have a prepared statement, which is perfectly fine.  I'll just ask that you read it slowly to allow Ms. Chen time to interpret it.

Ms. Rendelman?

MS. RENDELMAN:  I, I just wanted one clarification, and I apologize.

In terms of what the Government read, it almost appeared as though it was 51,000, and I just want the record clear.  My understanding is it was 50,000 total.  It -- the way it read, 1,000 was provided and an additional 50,000 was guarantee -- was promised, and just for clarification, my understanding is that it's a total of 50,000.

Do you understand the language that was used that perhaps may have confused me?

THE COURT:  I think so.

MS. RENDELMAN:  Or I may have misunderstood something that was said.

THE COURT:  Mr. Lockard?

MR. LOCKARD:  I'm not sure if that's a material issue for today's proceedings, but it's certainly something we will resolve in connection with the pre-sentence report.

THE COURT:  Okay, and that's fine.  And all that is...all that has been identified for purposes of today's proceeding is the $50,000 as it pertains to the forfeiture

amount, which Mr. Chen has admitted as part of the plea agreement.

MS. RENDELMAN:  Okay.

THE COURT:  And as far as -- to the extent the 50,000 versus 51,000 matters for purposes of calculations in the offense conduct or sentence recommendation, then I think the appropriate way to work through that is in the PSR, but now the Government is appropriately on notice that this is an issue that may merit a bit of additional discussion.

MS. RENDELMAN:  It's my neurosis that causes me to --

THE COURT:  That's what you're doing -- you're doing your job, Ms. Rendelman, which is to raise these points, so that's much appreciated.  I also appreciate the attention to detail.

So with that said, Mr. Chen, you can go ahead and read your prepared statement, and if Ms. Chen needs you to pause at any point, just let her, let her take time to interpret each portion of what you're reading.

THE DEFENDANT:  From approximately January 2023 to approximately May of 2023...

THE COURT:  All right, Ms. Chen, can you put that microphone closer to you?  Just to make sure we're picking up everything clearly.  That's perfect.  Thank you.

THE DEFENDANT:  Myself, along with Lin Feng knowingly acted as agents of the People's Republic of China and the PRC

USA v. Chen

official without prior notification to the Attorney General. Myself, along with Lin Feng, offer a sum of 50,000 to a individual.  This individual, I believe, was an IRS agent with intent to influence -- I believe was an IRS agent with intent to influence the agent to advance a defective whistleblower complaint regarding an entity run by the Falun Gong.  In total, I pay the agent $5,000.

That's it.

THE COURT:  Okay.  Let me just ask one question to clarify one of the points there that mostly was very clear, but there is one question that I'd like to ask you, Mr. Chen.

You used the phrase "with intent to influence," and what I think you are saying is that you gave money to the person you believed to be an IRS agent and that it was your intent to influence the agent to take certain actions.

Is that correct?

THE DEFENDANT:  Yes, you are correct.

THE COURT:  Okay.

And when this communication was taking place with the agent or the person you believed to be the IRS agent, where were you, Mr. Chen?  Were you here in this area in New York for some of those communications?

THE DEFENDANT:  In New York.

THE COURT:  Right, and were you -- the Government said that some of those communications took place when you were in

Newburgh, New York.  Is that correct?

THE DEFENDANT:  Yes, Newburgh, New York.

THE COURT:  Okay.  All right, thank you, Mr. Chen.

Did you commit these acts that you've just described knowingly and willfully?

THE DEFENDANT:  Yes, I did this knowingly.  I feel sorry to do that.

THE COURT:  Okay.  And, Mr. Chen, did you know that it was against the law to do what you were doing?

MS. RENDELMAN:  One moment, your Honor?

THE COURT:  Yes.

(Counsel consults with Defendant)

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right, thank you, Mr. Chen.

Mr. Lockard, is there anything else that you believe the Court needs to elicit from Mr. Chen before making a Rule 11 recommendation?

MR. LOCKARD:  No, your Honor.

THE COURT:  Okay.

Ms. Rendelman?

MS. RENDELMAN:  No, your Honor.

THE COURT:  And, Mr. Lockard, do you know of any reason why the Court should not recommend acceptance of Mr. Chen's guilty plea in this matter?

MR. LOCKARD:  I do not, your Honor.

THE COURT:  Ms. Rendelman?

MS. RENDELMAN:  No, your Honor.

THE COURT:  Okay.

Mr. Chen, in light of everything that has been said and discussed here today, is it still your wish to plead guilty to the charges in Counts Two and Three of the Indictment?

THE DEFENDANT:  Yes.

THE COURT:  Okay.

Mr. Chen, on the basis of your allocution and your responses to my questions here today, I find that you are fully competent and capable of entering an informed guilty plea.  I am satisfied that you understand your rights, including your right to go to trial, and the con -- and that you are aware of the consequences of your plea, including the sentence that may be imposed.

Based upon your plea allocution, Mr. Chen, I find that your plea is knowing and voluntary and that it is supported by an independent factual basis for each and every element of the crimes charged.  Accordingly, I respectfully report and recommend to Judge Román that Mr. Chen's plea be accepted and that Mr. Chen be adjudged guilty of the offenses charged in Counts Two and Three of the Indictment.

I further direct that a pre-sentence investigation be conducted by the United States Department of Probation and that a pre-sentence report be prepared.

THE DEFENDANT:  PSR, right?

THE COURT:  PSR, that's right.

Within 14 days from today, so no later than August 27th, 2024, Ms. Rendelman, please contact --

MS. RENDELMAN:  I'm sorry, I apologize, Judge.  I'm away.  I'm wondering if we can extend that until the first week in September if that's at all possible?

THE COURT:  It's going to be a little tight, I think, in terms of the sentencing date of October 30th.

MS. RENDELMAN:  So, so just to clarify, and, and I don't want to speak out of turn, I believe what happened was Judge Román had picked a date, just a control date --

THE COURT:  Yep.

MS. RENDELMAN:  -- with the understanding that we will likely contact him to let him know to extend, because the Court was aware that I'm away all of August.

THE COURT:  Okay.  I mean, that's fine.

Mr. Lockard, does the Government have any concerns about that timing?

MR. LOCKARD:  No, your Honor.

THE COURT:  Okay.

Well, let's do this.  Ms. Rendelman, when do you leave?

MS. RENDELMAN:  I leave on Friday.

THE COURT:  Okay.  Can you contact the Probation

Department before you leave just to schedule the interview?

MS. RENDELMAN:  Absolutely.

THE COURT:  Okay.  So schedule the interview for as soon as reasonably practicable when you return and we will extend the date for that in light of the circumstances that you've mentioned and that apparently you've already previewed for Judge Román, so we'll call it September 7th?

Is that a -- Ms. Brown, is that a weekday?

THE DEPUTY CLERK:  No, that's a Saturday.

THE COURT:  All right, so September 9th as the outside date to complete -- to have the interview.  It's always just better to have a firm date so that everybody can focus on that.

So please contact the Department of Probation this week, Ms. Rendelman, to schedule an interview between now and September 9th.

MS. RENDELMAN:  Thank you.

THE COURT:  Whenever you and Mr. Chen are both available.

Mr. Chen, I'm sure you will be assisted by Ms. Rendelman in connection with that interview, and, obviously, we'll arrange to have an interpreter present for that as well.

Mr. Chen, you must be fully honest and truthful during that interview, because if it comes to the Court's attention that you have provided false, incomplete, or misleading information, that may be held against you at the time of

sentencing.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.

So, Mr. Lockard, we'll have the prosecution case summary, for purposes of the pre-sentence report, due on September 9th as well.

I'll also direct the Clerk of Court to provide a transcript of these proceedings within 30 days setting forth my report and recommendation to Judge Román, and in accordance with our standard practice here in this courthouse, the transcript is to come to me first for review.

So the matter is adjourned for sentencing, the date that Judge Román has set as a control date is October 30th, 2024, at 2:15 p.m., but please contact Judge Román's chambers to let him know that we have set the interview date for the pre-sentence report at no later than September 9th, which means that date is going to have to move a little bit, but it sounds like you've already previewed that, so that should be helpful.

All right, Mr. Lockard, is there anything further we should address today from the Government's perspective?

MR. LOCKARD:  No, thank you, your Honor.

THE COURT:  All right.

Ms. Rendelman, anything further from Mr. Chen's perspective?

MS. RENDELMAN:  No, and thank you for the Court's patience.

THE COURT:  Absolutely.

Counsel, thank you very much.

Mr. Chen and Ms. Chen, thank you all so much.

We'll stand adjourned for today.  Take good care.

THE DEFENDANT:  Thank you so much, your Honor.

Certified to be a true and accurate

transcript of the digital electronic

recording to the best of my ability.

_____

Tabitha R. Dente, RPR, RMR, CRR

U.S. District Court

Official Court Reporter